United States District Court
Middle District of Florida
Tampa Division

**CLAUDIA J. FRIER,**

    *Plaintiff,*

v.                                                                    NO. 8:24-cv-732-WFJ-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

# Report and Recommendation

Claudia Frier challenges the Commissioner of Social Security's decision to terminate her supplemental security income. Doc. 1. An Administrative Law Judge (ALJ) entered the decision on January 23, 2024. Tr. 1268–96. The Acting Commissioner has filed a 2,030-page administrative record, Doc. 14, and each side has filed a brief, Docs. 15, 19. The Court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

## Overview

The ALJ found medical improvement had occurred as of November 12, 2014, making Frier no longer eligible for benefits. Tr. 1272–73, 1276, 1283. Frier argues that the finding is not supported by substantial evidence and the ALJ failed to apply the correct legal standards by failing to compare medical evidence and relying extensively on a hearing officer's decision. *See* Doc. 15.

## Standard of Review

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoted authority omitted).

## Medical Improvement

The Social Security Administration (SSA) periodically reviews recipients' continued entitlement to supplemental security income. 42 U.S.C. § 421(i)(1); 20 C.F.R. § 416.994(a). The SSA decides whether a recipient remains disabled "on a neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that [the recipient had] previously been determined to be disabled." 20 C.F.R. § 416.994(b)(1)(vi).

In reviewing whether a recipient remains disabled, the SSA uses a multi-step evaluation process. 20 C.F.R. § 416.994(b)(5)(i)–(viii). The issue Frier raises concerns the ALJ's finding at the second step of the process; specifically, that medical improvement had occurred as of November 12, 2014. *See* Doc. 15.

"Medical improvement" is "any decrease in the medical severity" of an impairment that was present at the time of the most recent favorable medical

decision finding the recipient disabled. 20 C.F.R. § 416.994(b)(1)(i). The most recent favorable decision finding the recipient disabled is known as the "comparison point decision" or "CPD."

"A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the] impairment[.]" *Id.* To determine whether medical improvement has occurred, the SSA compares the current medical severity of the impairment present at the time of the CPD to the medical severity of the impairment at the time of the CPD. 20 C.F.R. § 416.994(b)(1)(vii). To find improvement, an ALJ must make a comparison. *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

## CPD

Frier was born in 1980. Tr. 1282. She has a high-school education and no past relevant work.[1] Tr. 1282.

The ALJ found, and Frier does not dispute, that the CPD is an ALJ's decision dated March 31, 2009.[2] Tr. 1273; *see* Doc. 15. In the CPD, the ALJ found Frier disabled as of September 27, 2006. Tr. 120. The ALJ found that Frier had severe impairments of degenerative disc disease of the lumbosacral

---

[1] "Past relevant work is work that [a claimant has] done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it[.]" 20 C.F.R. § 416.960(b)(1).

[2] In the decision under review, the ALJ described the CPD as a decision "dated March 3, 2009." Tr. 1273. No decision dated March 3, 2009, appears in the record, and both parties refer to the March 31, 2009, decision as the CPD. *See* Doc. 15 at 1; Doc. 19 at 1. The ALJ's description presumably contains a typographical error.

3

spine, obesity, depression, and anxiety. Tr. 115. The ALJ further found that Frier had this residual functional capacity (RFC)[3]:

> [Frier] has the [RFC] to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a) except sit, stand and/or walk for 4 hours in an eight-hour workday. She can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. She can occasionally stoop (bend), crouch/squat, climb ladders and stairs and [frequently] twist. She can occasionally look down, turn head right or left, look up and hold head in static position. [Frier]'s depression and anxiety resulted in mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace without episodes of decompensation, each of extended duration. In addition, [she] is capable of performing simple routine repetitive tasks.

Tr. 115.

Considering the RFC and Frier's age, education, and work experience, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that [Frier] can perform[.]" Tr. 119. The ALJ explained:

> In determining whether a successful adjustment to work can be made, the undersigned must consider [Frier]'s [RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If [she] can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon [her] specific vocational profile (SSR 83-11). When [she] cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a [conclusion] of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If [she] has solely

---

[3] A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 416.945(a)(1).

4

> non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).
>
> If [Frier] had the [RFC] to perform the full range of sedentary work, considering [her] age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.27. However, the additional limitations so narrow the range of work [she] might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule. This conclusion is supported by Social Security Ruling(s) 96-9p.[4]

Tr. 119–20.

## Administrative Process

Through an initial determination made on November 12, 2014, the SSA found Frier no longer disabled. Tr. 105–06; *see also* Tr. 144–48. A state agency disability hearing officer upheld the determination. Tr. 169–76. The officer explained:

> At CPD, [Frier] was allowed disability benefits due to degenerative disc disease of the lumbosacral spine, obesity, depression and anxiety. She weighed 241 pounds, she had mild thoracic spine tenderness and moderate lumbosacral spine tenderness. [She] reported that her pain was 7/10. [She] had a depressed and anxious mood and her affect was labile. She had short-term memory deficits, she was unable to tolerate frustration and she had persistent mood swings.

Tr. 171.

The officer summarized Frier's hearing testimony and evidence from 2014 and 2015, Tr. 171, and concluded:

> A review of the total evidence indicates that medical improvement has been established since CPD. At CPD, [Frier] reported that her pain was

---

[4]Social Security Ruling 96-9p explains the SSA's policies on the impact of an RFC of less than a full range of sedentary work on a claimant's ability to do other work. *See* SSR 96-9p ("Purpose") (eff. July 2, 1996).

> 7/10. She had mild thoracic spine tenderness and moderate lumbosacral spine tenderness. She had a depressed and anxious mood and her affect was labile. She had short-term memory deficits, she was unable to tolerate frustration and she had persistent mood swings. Current physical records document that [her] level is 3/10 and the current pain relief makes a real difference for her. She has a full range of motion in her neck, a normal gait and a full range of motion in all major muscle groups. Her cranial nerves are intact and her cerebral function and coordination are normal. Due to chronic low back pain, fibromyalgia and type 2 diabetes, [she] is limited to medium work activities. Current psychological records document that [her] mental status shows no clinically significant findings. She is alert and fully oriented with an appropriate affect and demeanor. The psychological records … do not support the significant functional limitations reported on the mental impairment questionnaire completed by [her] treating source on 12/11/2014. Due to cyclothymic depression and generalized anxiety disorder, [she] has mild limitations in her ability to complete activities of daily living. She had mild limitations in maintaining social functioning and mild limitations in maintaining concentration, persistence and pace. However, she is capable of performing semi-skilled and unskilled work. [Frier] is a 35-year-old English-speaking female with a 12th grade education and no past relevant work. She is capable of performing other medium semi-skilled and unskilled work. Therefore, she is not disabled according to Social Security Guidelines.

Tr. 171–72.

Frier requested a hearing before an ALJ, and an ALJ conducted a hearing at which Frier and a vocational expert testified. Tr. 36–68. The ALJ thereafter issued a decision finding medical improvement had occurred as of November 12, 2014. Tr. 121–40. The Appeals Council granted Frier's request for review and remanded the case to an ALJ for further administrative proceedings to "ensure the record is complete and the claimant has had the opportunity to review all of the material in the claim file[.]" Tr. 141–43.

An ALJ conducted another hearing at which Frier and a vocational expert testified. Tr. 69–103. The ALJ issued a second decision finding medical improvement had occurred as of November 12, 2014. Tr. 12–35. This time, the

6

Appeals Council denied Frier's request for review. Tr. 1–6. Frier appealed the decision to this Court, and the Commissioner moved to reverse the decision below and remand the case for further administrative proceedings "to allow the ALJ to reevaluate whether [Frier] continues to be disabled." Tr. 1389 (internal quotation marks and alteration omitted). The Court granted the motion, reversed the Commissioner's decision under sentence four of § 405(g), and remanded the case to the Commissioner. Tr. 1389.

An ALJ conducted another hearing, at which Frier and a vocational expert again testified. Tr. 1297–1358. This resulted in the decision now under review, in which the ALJ found medical improvement had occurred as of November 12, 2014. Tr. 1268–96.

After finding that the CPD is the decision dated March 31, 2009, the ALJ found that, at that time, Frier had suffered from impairments of degenerative disc disease of the lumbosacral spine, obesity, depression, and anxiety, and that those impairments had resulted in the RFC described *supra*. Tr. 1273.

The ALJ found that since November 12, 2014, Frier has suffered from impairments of "degenerative disc disease; obesity; bipolar disorder; anxiety disorder; [and] diabetes mellitus." Tr. 1273. The ALJ found that, since November 12, 2014, those current impairments "individually and in combination" do not meet or equal any listing.[5] Tr. 1274.

---

[5] The Listing of Impairments "describes for each of the major body systems impairments [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). An ALJ must consider whether the claimant meets or equals a listing in the Listing of Impairments. *Id.* § 416.920(a)(4)(iii).

7

In finding that medical improvement had occurred on November 12, 2014, the ALJ explained:

> The medical evidence supports a finding that, by November 12, 2014, there had been a decrease in medical severity of the impairments present at the time of the CPD. Specifically, at the CPD, [Frier] was allowed benefits due to degenerative disc disease of the lumbosacral spine, obesity, depression, and anxiety. She weighed 241 pounds, and demonstrated mild to moderate tenderness of the thoracic and lumbosacral spine. [She] reported that her pain was 7/10. She also showed a depressed and anxious mood, and a labile affect. She had short-term memory deficits, low tolerance for frustration, and persistent mood swings (1F, 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 10F, 11F, 12F, 13F, 14F, 15F, 16F, 17F, 18F, 19F, 45F, 46F, 47F). However, as of the cessation date, [Frier]'s CPD impairments have decreased because her gait and coordination have been noted to be normal, and she has reported that pain has been controlled with medications. In addition, her mental status examinations have been relatively benign (1F, 20F, 21F, 27F, 30F, 33F, 36F, 41F, 43F, 48F, 49F, 51F, 53F, 54F, 55F, Hearing testimony). Therefore, medical improvement has occurred.

Tr. 1276.

The record the ALJ considered includes medical evidence from before and after the CPD, i.e., before and after March 31, 2009. *See* Tr. 1276. The record includes:

- Office-treatment records from Evaristo P. Badiola, M.D., from May 10, 1999, to July 12, 2006, Tr. 530–39;

- Surgical records from Winter Haven Hospital from May 17, 2001, Tr. 508–13;

- Emergency department records from Winter Haven Hospital from June 1, 2004, February 3, 2017, and February 4, 2017, Tr. 514, 946–84;

- Progress notes from Newberry Clinic from September 5, 2003, to July 20, 2006, Tr. 516–29;

- Office-treatment records from Gessler Clinic, P.A., from August 12, 2005, to September 6, 2006, Tr. 540–57;

- Progress notes, hospital records, and office-treatment records from Winter Haven Hospital Behavioral Health Division from June 16, 2006, to July 2023, Tr. 641–51, 768–86, 824–38, 1186–1267, 1704–25, 1997–2030;

- A consultative examination report from N. Kirmani, M.D., from December 23, 2006, Tr. 1726–29;

- Office-treatment records from First Help Clinic from January 10, 2007, to April 28, 2007, Tr. 566–84;

- Progress notes from St. Patrick Medical PA from February 16, 2007, Tr. 559–65;

- Progress notes from Frostproof Medical and Surgical Center from April 22, 2007, to July 2, 2007, Tr. 585–96;

- Progress notes from Urgent Care Med Center from November 13, 2007, to December 20, 2007, Tr. 597–607;

- Progress notes from Lakeland Dermatology from January 24, 2008, and February 14, 2008, Tr. 608–13;

- An internal medicine consultative examination report from Morris Kutner, M.D., from June 2, 2008, Tr. 614–17, 1701–03;

- A psychology consultative examination report from Gregory Marone, Ed.D., from June 4, 2008, Tr. 618–22;

- A psychiatric review technique from John Wright, Ph.D., from June 19, 2008, Tr. 626–39;

- A DDS case analysis from June 19, 2008, Tr. 640;

- A physical RFC assessment from James Patty, M.D., from November 6, 2008, Tr. 652–59;

- A psychiatric review technique from Jill Rowan, Ph.D., from November 7, 2008, Tr. 660–73;

- Office-treatment records from Physicians Services from January 12, 2009, to June 6, 2014, Tr. 680–767;

- A medical consultant's review of the physical RFC assessment from Edgar Martorell, M.D., from February 22, 2009, Tr. 675–79;

- Office-treatment records from Mid Florida Medical Services from June 2, 2015, to July 11, 2017, Tr. 1002–34;

- Radiology reports from A.T. Radiology from January 22, 2016, and February 19, 2016, Tr. 505–07;

- Office-treatment records from Good Health Physicians LLC, from January 13, 2017, to September 21, 2018, Tr. 1096–1148;

- Office-treatment records from Neurology and Neurosurgery Associates, P.A., from March 21, 2017, to October 24, 2022, Tr. 861–73, 1763–81, 1893–1951;

- Office-treatment records and progress notes from Polk Health Department from May 7, 2021, to February 16, 2023, Tr. 1730–62, 1952–96; and

- Office treatment records from Auburndale Clinic from December 10, 2021, to March 4, 2022, Tr. 1822–53.

*See* Tr. 1276.

The ALJ found Frier has severe impairments of degenerative disc disease, obesity, bipolar disorder, anxiety disorder, and diabetes mellitus. Tr. 1277. The ALJ found Frier has non-severe impairments of fibromyalgia, gastroesophageal reflux disease (GERD), migraines, hypertension, and respiratory impairment. Tr. 1277. The ALJ found Frier has the following RFC:

> Since November 12, 2014, based on the current impairments, [Frier] has had the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 6 hours in an 8-hour workday. She can sit 6 hours in an 8-hour workday. Pushing and/or

>  pulling are limited to the weights given above. She can occasionally climb ramps and stairs, stoop, and crouch, but never climb ladders, ropes or scaffolds. This person must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, as well as hazardous machinery and unprotected heights. This person is able to understand, remember and apply simple instructions. She can interact appropriately with supervisors, and occasionally with coworkers and the general public. She can concentrate, persist and maintain pace for 2 hours at a time. She can manage herself and adapt to routine changes in the workplace.

Tr. 1277–78.

In assessing Frier's RFC, the ALJ stated he "considered all of [Frier]'s medically determinable impairments, including those that are not severe." Tr. 1277. Considering the RFC finding and Frier's age, education, and work experience, the ALJ found that there are "a significant number of jobs in the national economy" that Frier can perform. Tr. 1282–83. Thus, the ALJ found Frier "not disabled." Tr. 1283.

## Arguments and Analysis

Frier contends the ALJ failed to apply the correct legal standards when finding medical improvement as of November 12, 2014, because the ALJ failed to compare medical evidence from before the CPD with the current medical evidence. Doc. 15 at 6–11. Frier complains that the ALJ "relied extensively" on the disability hearing officer's decision and the ALJ's finding "is almost completely identical" to the officer's finding "except the ALJ added a string cite" to exhibits consisting of "hundreds of pages of treatment notes." Doc. 15 at 8–9. Frier complains that "[t]he ALJ failed to cite to any specific medical records in support of his finding" and instead "simply pulled notations" from the officer's decision. Doc. 15 at 9. According to Frier, the ALJ's finding therefore is not supported by substantial evidence. Doc. 15 at 11.

Frier relies on three cases: *Reyes v. O'Malley*, No. 8:23-cv-123-AEP, 2024 WL 939597 (M.D. Fla. Mar. 5, 2024); *Brown v. Berryhill*, No. 3:16-cv-1344-MMH-JRK, 2017 WL 6541455 (M.D. Fla. Nov. 28, 2017), *report and recommendation adopted*, 2017 WL 6536741 (M.D. Fla. Dec. 21, 2017); and *Olivo v. Colvin*, No. 6:16-cv-259-PGB-JRK, 2017 WL 708743 (M.D. Fla. Jan. 30, 2017), *report and recommendation adopted sub nom. Olivo v. Commissioner of Social Security,* 2017 WL 700367 (M.D. Fla. Feb. 22, 2017). *See* Doc. 15 at 9–10.

In *Reyes*, this Court held that the ALJ reversibly erred by failing to directly cite or discuss any medical evidence from before the CPD, focusing the analysis only on the plaintiff's current condition. 2024 WL 939597, at *5–6. In *Brown* and *Olivo*, this Court held that the ALJ reversibly erred by relying on a hearing officer's decision in finding medical improvement, explaining the ALJ's decision is the decision under review, not the hearing officer's decision; that the ALJ cited the hearing officer's decision not to compare medical evidence or to support the ALJ's own comparison of the medical evidence but for ultimate findings; and that the ALJ omitted material parts of the hearing officer's decision or the hearing officer relied on evidence absent from the record. 2017 WL 6541455, at *5–6; 2017 WL 708743, at *5–6.

The Commissioner responds that the ALJ compared medical evidence from before the CPD with current medical evidence and emphasizes the paragraph in the ALJ's decision explaining the finding that medical improvement had occurred. Doc. 19 at 8–10 (citing Tr. 1276). The Commissioner argues that "the mere fact that the ALJ and Disability Hearing Officer provided similar, accurate summaries of the evidence is not error." Doc. 19 at 11. The Commissioner concedes that the ALJ's summary of medical

12

evidence from before the CPD is similar to the officer's summary but adds that the ALJ's summary of current medical evidence "is not the same at all" and that "the ALJ provided numerous citations to the record evidence for which he reviewed to make his decision that were not included" in the officer's decision. Doc. 19 at 11. The Commissioner distinguishes the cases on which Frier relies, observing that, in those cases, the ALJ merely incorporated by reference the officer's decision or cited only one medical record in the discussion of the CPD. Doc. 19 at 11–12. The Commissioner argues that "the ALJ here provided his own comparison of the evidence as required, and [Frier] cannot prove otherwise."[6] Doc. 19 at 12.

The Commissioner relies on three cases: *Christopher v. Acting Commissioner of Social Security*, No. 3:20-cv-1210-MMH-PDB, 2022 WL 4093068 (M.D. Fla. Sept. 7, 2022); *Plain v. Saul*, No. 1:20-cv-20624-JLK, 2021 WL 647135 (S.D. Fla. Jan. 29, 2021), *report and recommendation adopted,* 2021 WL 633764 (S.D. Fla. Feb. 18, 2021); and *Attmore v. Colvin*, 827 F.3d 872 (9th Cir. 2016). *See* Doc. 19 at 12–13.

In *Christopher*, this Court affirmed the Acting Commissioner's decision finding the plaintiff no longer disabled. 2022 WL 4093068, at *2. The plaintiff had argued that the ALJ failed to apply the correct legal standards in finding medical improvement because the ALJ failed to compare *all* medical evidence from before the CPD to the current medical evidence and because the ALJ

---

[6]The Commissioner also contends that Frier waived the argument that the ALJ's findings are not supported by substantial evidence by failing to provide "any explanation or … a single citation to any medical or other record evidence that the ALJ did not consider or that undermines the overall conclusion of the ALJ[.]" Doc. 19 at 10. In the appellate context, a party forfeits an argument by raising it perfunctorily. *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). For any particular finding not discussed in Frier's brief, the Commissioner is correct.

13

substantially copied a summary of evidence from a hearing officer's decision. Doc. 19-1 at 12, 16 (emphasis in original). The Court held that substantial evidence supported the finding of medical improvement, rendering any error in failing to compare all CPD evidence with the current evidence harmless, and further held that "[t]he law does not prohibit an ALJ from borrowing language from a hearing officer when undertaking the ALJ's own decisionmaking." Doc. 19-1 at 14–15, 17.

In *Plain*, the plaintiff moved for summary judgment, arguing that the SSA had ceased her disability benefits without cause and had not considered that she recently had been shot. 2021 WL 647135, at *6. The court denied the motion, explaining that the ALJ's opinion showed a review of the complete medical record and that the ALJ used current and prior medical records to support a finding of medical improvement. *Id.* at *6–7. The court noted that "[a]lthough there is no strict requirement for evaluation of prior objective findings," the ALJ had explicitly considered the most recent determination finding the plaintiff disabled due to bipolar disorder. *Id.*

In *Attmore*, the Ninth Circuit held that the ALJ had made the appropriate comparison, but substantial evidence did not support the ALJ's finding of medical improvement. 827 F. 3d at 874. In deciding that the ALJ had made the appropriate comparison, the court reasoned that the ALJ's reference to "improvement" implied a comparison of medical evidence from before the CPD to the current medical evidence, and, therefore, the court could draw "the specific and legitimate inference" that the ALJ compared the evidence as required. *Id.* at 877 (internal alteration omitted).

In this action, the ALJ conducted the required comparison by comparing medical evidence from before the CPD (Frier was allowed benefits due to

14

degenerative disc disease, obesity, depression, and anxiety; she weighed 241 pounds; she demonstrated mild to moderate tenderness of the thoracic and lumbosacral spine; she reported 7/10 pain; she had a depressed and anxious mood, a labile affect, short-term memory deficits, low tolerance for frustration, and persistent mood swings) to the current medical evidence (Frier's gait and coordination are normal, her pain is controlled with medications, and her mental status examinations have been relatively benign). *See* Tr. 1276. Unlike the ALJ in *Reyes*, the ALJ in this action included as exhibits medical evidence from before the CPD, *see* Tr. 1291–95, and used that evidence to support the comparison, *see* Tr. 1276.

Substantial evidence—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion—supports the ALJ's finding of medical improvement. As the ALJ explained, Frier's CPD impairments have improved, *see* Tr. 1276, and the exhibits cited by the ALJ in the comparison contain medical evidence sufficiently supporting the finding, *see, e.g.*, Tr. 683–753 (office treatment records from Physicians Services from May 2010 to June 2014 noting normal gait and many other normal findings as well as effective pain management); Tr. 828, 837 (progress notes from Winter Haven Hospital Behavioral Health Division from November 2014 and February 2015 showing improved mental status findings); Tr. 863, 871 (office-treatment records from Neurology and Neurosurgery Associates, P.A., from March and April 2017 noting normal gait and many other normal findings); Tr. 964, 980 (emergency department records from Winter Haven Hospital from June 2017 noting normal coordination and many other normal findings); Tr. 1194, 1209, 1213, 1224, 1239–41, 1247, 2002–03, 2009, 2011–19, 2025–29 (office-treatment records from Winter Haven Hospital Behavioral Health Division from November 2016 to July 2023 showing improved mental status findings and

15

stability); Tr. 1894, 1899, (office-treatment records from Neurology and Neurosurgery Associates, P.A., from December 2021 noting effective pain management with medications); Tr. 1115–47 (office-treatment records from Good Health Physicians LLC, from January 2017 to January 2018 reporting that Frier's pain is controlled with medication).

That the ALJ's summary of medical evidence from before the CPD borrows language from the hearing officer's decision, *compare* Tr. 1276, *with* Tr. 171, does not invalidate the ALJ's decision. Unlike the ALJs in *Brown* and *Olivo*, the ALJ in this action conducted the required comparison by comparing evidence from before the CPD to the current medical evidence. *See* Tr. 1276. And, as the Commissioner observes, *see* Doc. 19 at 11, the ALJ's summary of the current medical evidence and citations to medical records differ from the hearing officer's decision. *Compare* Tr. 1276, *with* Tr. 171–72. Furthermore,

> The law requires a comparison of the current medical severity of the impairment present at the time of the CPD to the medical severity of the impairment at the time of the CPD. *See* 20 C.F.R. § 416.994(b)(1)(vii). The law does not prohibit an ALJ from borrowing language from a hearing officer when undertaking the ALJ's own decisionmaking.

Doc. 19-1 at 17.

## Recommendation

The undersigned recommends **affirming** the Commissioner of Social Security's final decision and **directing** the Clerk of Court to enter judgment for the Commissioner and against Claudia Frier and close the file.

## Objections and Responses

"Within 14 days after being served with a copy of [a] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A [district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). "A party failing to object to … findings or recommendations … in a report and recommendation … waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions[.]" 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on January 3, 2025.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  The Hon. William Jung
    Counsel of record